# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ITXAMAR HERNANDEZ, on behalf of herself and all other similarly situated,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ARTHUR J. GALLAGHER SERVICE COMPANY, LLC, a Delaware limited liability company; PRONTO CALIFORNIA AGENCY LLC, a California limited liability company; PRONTO CALIFORNIA GENERAL AGENCY, LLC, a California limited liability company; and DOES 1-50,<br><br>　　　　　　　　　　　Defendants. | Case No.: 22-cv-01910-H-DEB<br><br>**ORDER:**<br><br>**(1) GRANTING JOINT MOTION FOR ADDENDUM TO CLASS ACTION SETTLEMENT AND RELEASE;**<br><br>**(2) CERTIFYING CLASS FOR SETTLEMENT PURPOSES;**<br><br>**(3) PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT;**<br><br>**(4) APPOINTING CLASS REPRESENTATIVE, CLASS COUNSEL, AND SETTLEMENT ADMINISTRATOR;**<br><br>**(5) APPROVING CLASS NOTICE; AND**<br><br>**(6) SCHEDULING FINAL APPROVAL HEARING**<br><br>[Doc. Nos. 49, 52.] |

On February 29, 2024, Plaintiff Itxamar Hernandez filed an unopposed motion for preliminary approval of class action settlement. (Doc. No. 49.) On April 8, 2024, the parties filed a joint motion to add a second addendum to their joint stipulation of class and representative action settlement and release. (Doc. No. 52.)

The Court held a hearing on Plaintiff's motion for preliminary approval on April 8, 2024. Martha Michiko Vartanian appeared for Plaintiff. Joan B. Fife and Emilie C. Woodhead appeared for Defendants Arthur J. Gallagher Service Company ("Arthur J. Gallagher") and Pronto Auto Insurance Services, Inc., Pronto California Agency LLC, and Pronto California General Agency LLC (collectively "Pronto"). For the reasons below, the Court grants the parties' joint motion to add a second addendum to their joint stipulation of class and representative action settlement and release, and the Court grants Plaintiff's motion for preliminary approval and sets a schedule for further proceedings.

## Background

### I. Factual and Procedural Background

This is a wage and hour class action. Defendant Arthur J. Gallagher is a global insurance brokerage and risk management services firm operating throughout California, with its headquarters in Illinois. (Doc. No. 49-2, Melmed Decl. ¶ 14.) Plaintiff asserts that Defendant Arthur J. Gallagher is the owner of Defendant Pronto. (Id.)

Plaintiff is a citizen of California and at all relevant times worked for Defendants in California as a non-exempt sales agent from around January 2020 through October 2023. (Id. ¶ 15.) Plaintiff alleges that Defendants' non-exempt California employees experienced various violations of California's wage-and-hour laws due to Defendants' policies and practices. (Id. ¶¶ 15, 26-38.)

On October 28, 2022, Plaintiff filed a class action complaint against Defendants in the Superior Court of California, County of San Diego.[1] (Doc. No. 1-2, Compl.) On

---

[1] In the original complaint, Defendant Pronto was initially named as "Pronto Auto Insurance Services, Inc." (Doc. No. 1-2, Compl. at 1.)

December 2, 2022, Defendant Arthur J. Gallagher removed the action to the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§ 1441 and 1446 on the basis of jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).[2]  (Doc. No. 1, Notice of Removal.)

On April 4, 2023, Plaintiff filed a first amended complaint against Defendants. (Doc. No. 21.)  On June 7, 2023, Plaintiff filed a second amended complaint ("SAC") against Defendants, alleging claims for: (1) failure to pay all minimum wages; (2) failure to pay all overtime wages; (3) failure to provide rest periods and pay missed rest period premiums; (4) failure to provide meal periods and pay missed meal period premiums; (5) failure to maintain accurate employment records; (6) failure to pay wages timely during employment; (7) failure to pay all wages earned and unpaid at separation; failure to indemnify all necessary business expenditures; failure to furnish accurate itemized wage statements; (10) violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200-17210; and (11) penalties under California's Private Attorneys General Act ("PAGA"), California Labor Code § 2699 *et seq.*[3]  (Doc. No. 35, SAC ¶¶ 82-135.)  On June 30, 2023, Defendants filed an answer to Plaintiff's SAC. (Doc. No. 39.)

On November 9, 2023, the parties notified the Court that they had reached a settlement in principle. (Doc. No. 45.)  By the present motion, Plaintiff moves for an order:

---

[2]  On December 29, 2022, Plaintiff filed a motion to remand the action back to state court. (Doc. No. 8.)  On January 23, 2023, Plaintiff withdrew her motion to remand. (Doc. No. 12.)

[3]  On April 4, 2024, pursuant to the parties' joint motion, the Court granted Plaintiff leave to file a Third Amended Complaint. (Doc. No. 51.)  Plaintiff's third amended complaint, including the modifications discussed at the April 8, 2024 hearing, is due by April 11, 2024. (Id. at 2.)  The filing of this third amended complaint is part of the parties' settlement agreement. (See Doc. No. 49-2, Melmed Decl. ¶ 25, Ex. A, Settlement § 12.1.)  In addition, at the April 8, 2024 hearing, the parties agreed and represented that Plaintiff's filing of her third amended complaint should not affect the Court's approval of Plaintiff's motion for preliminary approval of the class action settlement.

(1) preliminarily approving the settlement; (2) approving the class notice; (3) appointing ILYM Group, Inc. to administer the settlement and notice process; and (4) scheduling a final approval hearing. (Doc. No. 49-1 at 5-7.)

## II.     The Proposed Settlement

The settlement agreement defines the settlement class as: "all individuals who are or were employed by the Gallagher Entities as non-exempt employees in California during the Class Period."[4] (Doc. No. 49-2, Melmed Decl. Ex. A, Settlement § 1.5.) "Class Period" is defined as "the period from October 28, 2018 until the date the Court grants Preliminary Approval." (Id. § 1.12.)

Under the settlement agreement, Defendant will pay a gross settlement amount of $4,000,000. (Id. § 3.1.) Each settlement class member will receive an individual class payment calculated by "(a) dividing the Net Settlement Amount by the total number of Workweeks worked by all Participating Class Members during the Class Period and (b) multiplying the result by each Participating Class Member's Workweeks." (Id. § 3.2.4.)

Under the settlement agreement, upon the funding of the gross settlement amount by Defendants, every participating class member will release Defendants from the "Released Class Claims," which is defined as "any and all claims, known or unknown, that were asserted in any complaint in the Action and/or Plaintiff's PAGA Notices; as well as any and all claims, known or unknown, that could have been asserted against Defendants and/or any of the Gallagher Entities in any complaint in the Action or Plaintiff's PAGA Notices

---

[4]     The parties' settlement agreement defines "Gallagher Entities" as "any and all entities that are encompassed within the corporate umbrella of Arthur J. Gallagher & Co., including but not limited to Arthur J. Gallagher & Co.; Arthur J. Gallagher Service Company, LLC; Arthur J. Gallagher Service Company, Inc.; Pronto California Agency LLC; Pronto California General Agency LLC; Arthur J. Gallagher & Co. Insurance Brokers of California, Inc.; Arthur J. Gallagher Risk Management Services, Inc.; Gallagher Basset Services, Inc.; Risk Placement Services, Inc.; Gallagher Benefit Services, Inc.; Arthur J. Gallagher Brokerage & Risk Management Services, LLC; Arthur J. Gallagher (U.S.) LLC; and Premier Insurance Services, Inc." (Doc. No. 49-2, Melmed Decl. Ex. A, Settlement § 1.24.)

based on the facts and allegations alleged in any complaint in the Action and/or Plaintiff's PAGA Notices." (Id. §§ 1.42, 5.2.) In addition, Defendant will be released from the Released PAGA Claims, which is defined as "any and all claims, known or unknown for civil penalties under California Labor Code section 2698 et seq. (PAGA) that: were asserted in any complaint in the Action and/or Plaintiff's PAGA Notices; as well as any and all claims, known or unknown, that could have been asserted against Defendants and/or any of the Gallagher Entities in any complaint in the Action or Plaintiff's PAGA Notices based on the facts and allegations alleged in any complaint in the Action and/or Plaintiff's PAGA Notices." (Id. §§ 1.43, 5.3.)

Plaintiff has indicated that she intends to seek a class representative's service payment of up to $7,500.00 from the settlement fund. (Id. § 3.2.1.) Class counsel also intends to request an attorneys' fee award of $1,333,333.33, or one-third of the gross settlement fund, as well as litigation expenses of up to $20,000. (Id. § 3.2.2.)

The parties selected ILYM Group, Inc. be appointed to serve as the settlement administrator. (Id. § 7.1.) The settlement administrator will mail the class notice to the class via First Class USPS mail. (Id. § 7.4.2.) The settlement administrator will also issue checks for the individual class payments and/or individual PAGA payments and send them to the class members via First Class USPS mail. (Id. § 4.4.1.) Settlement class members reserve the right to object or opt out of the settlement, except that they may not opt out of the settlement of the Released PAGA claims. (Id. §§ 5.3, 5.3.1, 7.5; Doc. No. 49-1 at 21.) See O'Connor v. Uber Techs., Inc., 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (explaining that "in a lawsuit which asserts a PAGA claims and seeks class certification for labor/wage claims, even class members who opt out of the class [are] bound by an adverse PAGA judgment or settlement" (citing Arias v. Superior Ct., 46 Cal. 4th 969, 986 (2009)).

/ / /

/ / /

/ / /

## Discussion

### I.  Class Certification

Plaintiff seeks to certify a class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) for the purposes of settlement. (Doc. No. 49-1 at 23-27.) The proposed settlement class is defined as "all individuals who are or were employed by the Gallagher Entities as non-exempt employees in California during the Class Period." (Doc. No. 49-2 at p.1 § 1.5.)

A plaintiff seeking to certify a class under Rule 23(b)(3) must first satisfy the requirements of Rule 23(a). Fed. R. Civ. P. 23(b); see Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011). Once subsection (a) is satisfied, the purported class must then fulfill the requirements of Rule 23(b)(3). Id.

#### A.  Rule 23(a) Requirements

Rule 23(a) establishes that one or more plaintiffs may sue on behalf of class members if all of the following prerequisites are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." Rannis v. Recchia, 380 F. App'x 646, 651 (9th Cir. 2010); see also Hilsley v. Ocean Spray Cranberries, Inc., No. 17-cv-02355-GPC-MDD, 2018 WL 6300479, *3 (S.D. Cal. Nov. 29, 2018) ("As a general rule, . . . classes of 40 or more are numerous enough." (quoting Ikonen v. Hartz Mtn. Corp., 122 F.R.D. 258, 262 (S.D. Cal. 1988))); West v. Cal. Servs. Bureau, Inc., 323 F.R.D. 295, 303 (N.D. Cal. 2017) (a class of more than 40 "raises a presumption of impracticability of joinder").

Plaintiff represents that there are approximately 2,169 members in the settlement class. (Doc. No. 49-1 at 24; Doc. No. 49-2, Melmed Decl. ¶ 4.) As such, the numerosity prerequisite is met here. See Rannis, 380 F. App'x at 651; Hilsley, 2018 WL 6300479, at *3; West, 323 F.R.D. at 303.

The commonality prerequisite is met if there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A common question 'must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC, 31 F.4th 651, 663 (9th Cir. 2022) (quoting Wal-Mart, 564 U.S. at 350). "By contrast, an individual question is one where members of a proposed class will need to present evidence that varies from member to member." Id. "[T]he key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether class treatment will 'generate common answers apt to drive the resolution of the litigation.'" Abdullah v. U.S. Sec. Assoc., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (quoting Wal-Mart, 564 U.S. at 350) (emphasis removed).

Plaintiff argues that the proposed settlement class satisfies the commonality requirement because all class member share the following legal and factual questions: (1) whether Defendants failed to accurately calculate the class members' wages owed; (2) whether Defendants failed to provide compliant wage statements in violation of California Labor Code § 226; (3) whether Defendant failed to provide class members with compliant, duty-free rest and meal periods; and (4) whether Defendants failed to reimburse the class members for reasonable and necessary business expenses incurred. (Doc. No. 49-1 at 24-25.) These common questions raised by Plaintiff are sufficient to satisfy the commonality requirement.

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). When determining whether the typicality prerequisite is met, courts will look at "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). Importantly, the typicality inquiry focuses on "the nature of the

claim . . . of the class representative, and not . . . the specific facts from which it arose." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (quoting Hanon, 976 F.2d at 508).

Here, Plaintiff argues that typicality is satisfied because Plaintiff was subject to the same allegedly uniform policies and practices as the class members, and Plaintiff's claims are the same as the claims that could be brought by the class members. (Doc. No. 49-1 at 25; Doc. No. 49-, Hernandez Decl. ¶ 4.) Plaintiff has sufficiently demonstrated that her claims are typical of the claims of the class, and, thus, the typicality requirement has been satisfied.

The adequacy of representation prerequisite requires that the class representative be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate if the plaintiff and class counsel (1) do not have any conflicts of interest with any other class members and (2) will "prosecute the action vigorously" on behalf of the class. Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978) (citation omitted); see Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003).

Plaintiff contends that her claims and the claims of the rest of the class are virtually coextensive, and Plaintiff represents that there are no conflicts between herself and any other class member. (Doc. No. 49-1 at 25; Doc. No. 49-3, Hernandez Decl. ¶ 5.) Plaintiff's counsel also represents that it has no conflicts of interest. (Doc. No. 49-1 at 25; Doc. No. 49-2, Melmed Decl. ¶ 7.) In addition, Plaintiff's counsel has significant experience litigating class actions and has prosecuted this case vigorously. (See Doc. No. 49-1 at 25; Doc. No. 49-2, Melmed Decl. ¶¶ 8-13.) As such, the adequacy of representation requirement has been met.

In sum, all of the prerequisites of Rule 23(a) are satisfied here.

B.     Rule 23(b)(3) Requirements

Federal Rule of Civil Procedure 23(b)(3) requires a court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3)'s requirements are designed "to cover cases 'in which a class action would achieve economies of time, effort, and expenses, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997) (citation omitted). If the parties seek to certify a class for settlement purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial." Id. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)).

### i. Predominance

A plaintiff must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance inquiry focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623 (citation omitted). It "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the noncommon, aggregation-defeating, individual issues." Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016) (citation omitted).

Here, Plaintiff contends that the common issues here concerning the uniform deficiencies to Defendants' minimum wage and overtime payment practices, reimbursement practices, rest breaks, meal periods, and wage statement policies raise predominating factual and legal issues. (Doc. No. 49-1 at 26.) The Court agrees. As such, common questions of law and fact predominate here.

### ii. Superiority

A plaintiff must also demonstrate the superiority of maintaining a class action. Fed. R. Civ. P. 23(b)(3). In considering whether a class action is superior, a court may consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

  (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

  (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

  (D) the likely difficulties in managing a class action.

Id. The class action method is generally considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted).

  Here, the parties estimate that the settlement class consists of approximately 2,169 members and all their claims are based on the same allegedly unlawful policies and practices and the same legal theories. (See Doc. No. 49-2, Melmed Decl. ¶¶ 4, 26-38.) Resolving these disputes in a single class action rather than individually would promote greater efficiency and reduce litigation costs. See Johnson v. Serenity Transportation, Inc., No. 15-CV-02004-JSC, 2018 WL 3646540, at *15 (N.D. Cal. Aug. 1, 2018) ("[A] class action is more manageable because several claims turn on [defendant]'s common policies or lack thereof, which can be proven through evidence that will be applicable to the entire class."). As such, a class action is the superior method of adjudicating this matter.

  In sum, the requirements of Rule 23(b)(3) are satisfied. As a result, the Court grants preliminary certification of the proposed class. The Court may review this finding at the final approval hearing.

  C. Appointment of Class Representative and Class Counsel

  Plaintiff meets the commonality, typicality, and adequacy requirements of Rule 23(a). As such, Plaintiff is appointed as class representative. See Coleman v. United Servs. Auto. Ass'n, No. 21-CV-217-RSH-KSC, 2023 WL 9110926, at *28 (S.D. Cal. Dec. 22, 2023) ("Rule 23 governs whether a plaintiff should be appointed as class representative" (citing In re Bridgepoint Educ. Inc. Secs. Litig., No. 12-cv-1737-JM-JLB, 2015 WL 224631, *8 (S.D. Cal. Jan. 15, 2015)).

  Under Rule 23(g), a court that certifies a class must appoint class counsel. Fed. R. Civ. P. 23(g)(1). A court must consider the following factors when appointing class

counsel: "(i) the work counsel has done in identifying or investigating potential clams in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsels' knowledge of the applicable law; and (iv) the resources that counsel will commit to represent the class." Fed. R. Civ. P. 23(g)(1)(A). The court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interest of the class." Fed. R. Civ. P. 23(g)(1)(B).

Here, Melmed Law Group P.C. has significant experience litigating California-wide class actions, including a variety of wage and hour class actions. (See Doc. No. 49-2, Melmed Decl. ¶¶ 8-13.) As such, Melmed Law Group P.C. is appointed as class counsel pursuant to Federal Rule of Civil Procedure 23(g).

**II.    The Settlement**

Federal Rule of Civil Procedure 23(e) requires the Court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable." Staton, 327 F.3d at 959 (citation omitted). To make this determination, the Court must consider a number of factors, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. Id.

"In addition, the settlement may not be the product of collusion among the negotiating parties." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)). "Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (citation omitted). "Signs of

collusion include: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a 'clear sailing provision'; and (3) an arrangement for funds not awarded to revert to defendant rather than to be added to the settlement fund." Hefler v. Wells Fargo & Company, No. 16-cv-05479-JST, 2018 WL 4207245, *8 (N.D. Cal. Sept. 4, 2018) (quoting Bluetooth, 654 F.3d at 947).

Given that some of these factors cannot be fully assessed until a court conducts the final approval hearing, "a full fairness analysis is unnecessary at this stage." Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation omitted); see Uschold v. NSMG Shared Servs., LLC, 333 F.R.D. 157, 169 (N.D. Cal. 2019). Rather, at the preliminary approval stage, a court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible approval" and thus, whether the notice to the class and the scheduling of a fairness hearing is appropriate. Alberto, 252 F.R.D. at 666 (citation omitted); see Uschold, 333 F.R.D. at 169 ("At the preliminary approval stage, 'the settlement need only be potentially fair.'"). Preliminary approval of a settlement and notice to the class is appropriate if (1) "the proposed settlement appears to be the product of serious, informed, and non-collusive negotiations"; (2) "has no obvious deficiencies"; (3) "does not improperly grant preferential treatment to class representatives or segments of the class"; and (4) "falls within the range of possible approval." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079–80 (N.D. Cal. Apr. 12, 2007) (citation omitted); see also Beaver v. Tarsadia Hotels, No. 11-cv-01842-GPC-KSC, 2017 WL 2268853, *2–*3 (S.D. Cal. May 24, 2007).

In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." Seattle, 955 F.2d at 1276. Additionally, the Ninth Circuit favors deference to the "private consensual decision of the [settling] parties," particularly where the parties are represented by experienced counsel and negotiation has been facilitated by a neutral party. See Rodriguez v. West Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) (citation omitted).

After reviewing the proposed settlement in light of the above factors, the Court concludes that preliminary approval of the settlement is appropriate. The proposed settlement agreement appears to be the result of serious, informed, and non-collusive negotiations. See Tableware Antitrust Litig., 484 F. Supp. 2d at 1079–80. The proposed settlement was the result of contentious negotiations and was reached after the parties participated in a full-day mediation with an experienced mediator who has extensive experience in California wage and hour class action lawsuits. (Doc. No. 49-2, Melmed Decl. ¶ 24.) Prior to that mediation, Plaintiff's counsel conducted significant informal discovery, including:

> numerous telephonic conferences with Plaintiff; inspection and analysis of hundreds of pages of documents and other information produced by Plaintiff and Defendant; analysis of work-related data from a sample of Class Members and PAGA Class Members; and an analysis of the legal positions taken by Defendant; investigation into the viability of class treatment of the claims asserted in the action; analysis of potential class-wide damages, including information sufficient to understand Defendant's potential defenses to Plaintiff's claims; research of the applicable law with respect to the claims asserted in the amended complaint and the potential defenses thereto; and assembling and analyzing of data for calculating damages.

(Id. ¶ 23.) Considering this history, the record indicates the parties "carefully investigated the claims before reaching a resolution," which weighs in favor of preliminary approval. Ontiveros v. Zamora, 303 F.R.D. 356, 371 (E.D. Cal. 2014) (citation omitted); see also Loreto v. Gen. Dynamics Info. Tech., Inc., No. 19-cv-1366-GPC, 2021 WL 3141208, *4 (S.D. Cal. July 26, 2021) (finding that a settlement "facilitated by an experienced mediator after the exchange of sufficient discovery to allow the parties to ascertain Defendant's potential exposure," supported preliminary approval); In re Zynga Inc. Sec. Litig., No. 12-CV-04007-JSC, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) ("The use of a mediator and the presence of discovery "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'").

The proposed settlement agreement also does not appear to have any obvious deficiencies, does not improperly grant preferential treatment to the class representative or

segments of the class, and falls within the range of possible approval.  See Tableware Antitrust Litig., 484 F. Supp. 2d at 1079–80.  Further, class counsel is experienced in litigating California-wide class actions, including a variety of wage and hour class actions. (See Doc. No. 49-2, Melmed Decl. ¶¶ 8-13.)  See Romero v. Securus Tech., Inc., No. 16-cv-1283-JM, 2020 WL 3250599, *6 (S.D. Cal. June 16, 2020) (finding that class counsel's "extensive experience in complex litigation and class actions," supported preliminary approval).  Class counsel represents that although it continues to believe in the merits of Plaintiff's claims, Defendants have strong defenses to the claims and continued litigation would be costly, time consuming, and uncertain in outcome, particularly given the risk of the class not being certified. (Doc. No. 49-1 at 30-31; Doc. No. 49-2, Melmed Decl. ¶¶ 51, 56-57; see also Doc. No. 49-1 at 16-19.)

Moreover, the proposed settlement is for $4,000,000 with an expected net settlement amount of at least $2,471,666.67. (Doc. No. 49-1 at 6, 20; Doc. No. 49-2, Settlement § 3.1.)  And the settlement fund is non-reversionary, meaning that none of the gross settlement amount will revert back to Defendant. (Doc. No. 49-1 at 6, 20; Doc. No. 49-2, Settlement § 3.1.)  This amount is a fair and reasonable result given the Defendants' various defenses and falls within the range of possible approval. (Doc. No. 49-2, Melmed Decl. ¶ 51.)  See Loeza v. JPMorgan Chase Bank, NA, No. 13-cv-0095-L-BGS, 2015 WL 13357592, *8 (S.D. Cal. Aug. 8, 2015) ("In determining whether a settlement agreement is substantively fair to the class, a court must balance the value of plaintiffs' expected recovery against the value of the settlement offer." (citing Tableware Antitrust Litig., 484 F. Supp. 2d at 1080)); see also Zynga, 2015 WL 6471171, *10 ("A cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." (citation omitted)).

Class counsel also intends to request an attorneys' fee award of $1,333,333.33, or one-third of the gross settlement fund, as well as litigation expenses of up to $20,000. (Doc. No. 49-1 at 32-33; Doc. No. 49-2, Settlement § 3.2.2.)  The request for attorneys' fees is within the range of acceptable attorneys' fees in Ninth Circuit cases.  See Vasquez v. Coast

1  Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. Mar. 6, 2010) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% the total settlement value, with 25% considered the benchmark." (citations omitted)); see also Bluetooth, 654 F.3d at 942 (noting that "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award" in class action settlements). Additionally, the proposed incentive award of $7,500 for Plaintiff appears to be reasonable. (Doc. No. 49-1 at 33; Doc. No. 49-2, Settlement § 3.2.1.)   See Gutierrez v. Amplify Energy Corp., No. 8:21-CV-01628-DOCJDEX, 2023 WL 6370233, at *8 (C.D. Cal. Sept. 14, 2023) ("Service awards of $7,500 or larger are often awarded in this Circuit.").

For the foregoing reasons, the Court conditionally grants preliminary approval of the proposed settlement.  The Court reserves judgment on the reasonableness of the attorneys' fees for the final approval hearing.

### III. Class Notice

Class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."   Roes, 1–2 v. SFBSC Mgmt., LLC, 944 F.3d 1035, 1045 (9th Cir. 2019) (quoting Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 174 (1974)).  In addition, the class notice must satisfy the content requirements of Federal Rule of Civil Procedure 23(c)(2)(B), which provides the notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

/ / /

/ / /

A. Content of Notice

The content of the proposed class notice meets the requirements of Rule 23(c)(3). (Doc. No. 49-2, Melmed Decl. Ex. A, Settlement Ex. 1 at ECF pp. 59-70.) In clearly understandable language, the proposed class notice provides the following: a description of the lawsuit; a description of the settlement classes and their claims; an explanation of the material elements of the settlement, including payment estimates; a statement declaring that class members may exclude themselves from or object to the settlement; a description that explains how class members may exclude themselves from the settlement, object to the terms of the settlement, and/or challenge their individual workweeks/pay period calculations; a description of the binding effect of the class judgment on class members who do not opt out; and a description of the fairness hearing and how class members can participate in it. (See id.)

B. Method of Notice

The proposed method of notice is also reasonable. The parties have requested that ILYM Group, Inc. be appointed to serve as the settlement administrator. (Doc. No. 49-2, Melmed Decl. Ex. A, Settlement § 7.1.) Within 21 days of the Court's entry of this preliminary approval order, Defendants will provide the settlement administrator with the relevant class data, which includes each class members' name, last-known mailing address, social security number, and number of class period workweeks and pay periods. (Id. §§ 1.8, 4.2.) Within 14 days of receiving the class member data from Defendants, the settlement administrator will mail the class notice to the class members via First Class USPS mail. (Id. § 7.4.2.) Within three business days of the settlement administrator receiving a class notice returned by USPS as undeliverable, the settlement administrator will re-mail the class notice using any forwarding address provided by USPS.[5] (Id. § 7.4.3.)

---

[5]   If USPS does not provide a forwarding address, the settlement administrator will conduct a class member address search, and re-mail the class notice to the most current address obtained. (Doc. No. 49-2, Melmed Decl. Ex. A, Settlement § 7.4.3.)

Within 45 days from the postmark date of the initial mailing of the class notice, class members may make a written object to the settlement, challenge the number of workweeks or PAGA pay periods attributed to them on the class notice, or request exclusion from the class.[6]  (Id. §§ 1.46, 7.5.1, 7.6, 7.7.2.)  Finally, at least 14 days before the deadline for Plaintiff to file its motion for final approval of the settlement, the settlement administrator will provide to class counsel and defense counsel a declaration suitable for filing in Court attesting to its due diligence and compliance with all of its obligations under the settlement agreement.  (Id. § 7.8.5.)

After reviewing the content and the proposed method of providing notice, the Court determines that the class notice is adequate and sufficient to inform the class members of their rights.  Accordingly, the Court approves the form and manner of giving notice to the class of the proposed settlement.

## IV.   Scheduling Final Approval Hearing

The Court schedules the final approval hearing for **Monday, August 26, 2024**, at **10:30 a.m. Pacific Time.**  Defendants must submit a class list to the settlement administrator by **Monday, April 29, 2024**.  The settlement administrator must mail class notice packets to all class members as set forth in the settlement agreement by **Monday, May 13, 2024**.  **Monday, June 27, 2024** is the deadline: (1) for class members to postmark share forms with challenges; (2) for class members to postmark request for exclusion; and (3) for class members to submit any objections to settlement.  The settlement administrator must provide class counsel with a declaration of due diligence by **Monday, July 15, 2024**.  Plaintiff and class counsel must file all papers in support of final approval, the plan of allocation, and any fee and expense application or compensatory award by **Monday, July 29, 2024**.  Any reply papers must be filed by **Monday, August 12, 2024**.

///

---

[6]   This deadline is extended by 14 days for any class member whose class notice was re-mailed.  (Doc. No. 49-2, Melmed Decl. Ex. A, Settlement §§ 1.46, 7.4.4.)

## Conclusion

For the reasons above, the Court grants the parties' joint motion to add a second addendum to their joint stipulation of class and representative action settlement and release, and the Court grants Plaintiff's motion for preliminary approval of class action settlement. The Court certifies the class for purposes of settlement, preliminarily approves the proposed settlement, appoints class representative and class counsel, and approves the form and manner of the notice of the proposed settlement to the settlement class members. The Court also appoints ILYM Group Inc. as the settlement administrator. Further, the Court schedules the final approval hearing for **Monday, August 26, 2024, at 10:30 a.m. Pacific Standard Time**. Plaintiff must file a motion for final approval of the settlement, and any motions for fee awards and incentive awards on or before **Monday, July 29, 2024**

**IT IS SO ORDERED.**

DATED: April 8, 2024

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT