# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ITXAMAR HERNANDEZ, on behalf of herself and all other similarly situated, <br><br>                                      Plaintiff, <br><br> v. <br><br> ARTHUR J. GALLAGHER SERVICE COMPANY, LLC, a Delaware limited liability company; PRONTO CALIFORNIA AGENCY LLC, a California limited liability company; PRONTO CALIFORNIA GENERAL AGENCY, LLC, a California limited liability company; and DOES 1-50, <br><br>                                  Defendants. | Case No.:  22-cv-01910-H-DEB <br><br> **ORDER:** <br><br> **(1) CERTIFYING SETTLEMENT CLASS;** <br><br> **(2) GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND** <br><br> **(3) GRANTING PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES, COSTS, AND A CLASS REPRESENTATIVE INCENTIVE AWARD** <br><br> [Doc. No. 58.] |

On July 29, 2024, Plaintiff Itxamar Hernandez filed an unopposed motion for final approval of class action settlement. (Doc. No. 58.) The Court held a final approval hearing on August 26, 2024. Jonathan Melmed and Laura Supanich appeared for Plaintiff. Joan B. Fife and Emilie C. Woodhead appeared for Defendants Arthur J. Gallagher Service Company ("Arthur J. Gallagher") and Pronto Auto Insurance Services, Inc., Pronto

California Agency LLC, and Pronto California General Agency LLC (collectively "Pronto"). No class members filed an objection and no objectors appeared at the final approval hearing. For the reasons below, the Court grants Plaintiff's motion for final approval of class action settlement, and the Court grants Plaintiff's requests for attorneys' fees, costs, and a class representative incentive award.

**Background**

## I.     Factual and Procedural Background

This is a wage and hour class action. Defendant Arthur J. Gallagher is a global insurance brokerage and risk management services firm operating throughout California, with its headquarters in Illinois. (Doc. No. 49-2, Melmed Decl. ¶ 14.) Plaintiff asserts that Defendant Arthur J. Gallagher is the owner of Defendant Pronto. (Id.)

Plaintiff is a citizen of California and at all relevant times worked for Defendants in California as a non-exempt sales agent from around January 2020 through October 2023. (Id. ¶ 15.) Plaintiff alleges that Defendants' non-exempt California employees experienced various violations of California's wage-and-hour laws due to Defendants' policies and practices. (Id. ¶¶ 15, 26-38.)

On October 28, 2022, Plaintiff filed a class action complaint against Defendants in the Superior Court of California, County of San Diego.[1] (Doc. No. 1-2, Compl.) On December 2, 2022, Defendant Arthur J. Gallagher removed the action to the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§ 1441 and 1446 on the basis of jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).[2] (Doc. No. 1, Notice of Removal.)

On April 4, 2023, Plaintiff filed a first amended complaint against Defendants.

---

[1]     In the original complaint, Defendant Pronto was initially named as "Pronto Auto Insurance Services, Inc." (Doc. No. 1-2, Compl. at 1.)

[2]     On December 29, 2022, Plaintiff filed a motion to remand the action back to state court. (Doc. No. 8.) On January 23, 2023, Plaintiff withdrew her motion to remand. (Doc. No. 12.)

(Doc. No. 21.)  On June 7, 2023, Plaintiff filed a second amended complaint ("SAC") against Defendants, alleging claims for: (1) failure to pay all minimum wages; (2) failure to pay all overtime wages; (3) failure to provide rest periods and pay missed rest period premiums; (4) failure to provide meal periods and pay missed meal period premiums; (5) failure to maintain accurate employment records; (6) failure to pay wages timely during employment; (7) failure to pay all wages earned and unpaid at separation; (8) failure to indemnify all necessary business expenditures; (9) failure to furnish accurate itemized wage statements; (10) violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200-17210; and (11) penalties under California's Private Attorneys General Act ("PAGA"), California Labor Code § 2699 *et seq.*[3]  (Doc. No. 35, SAC ¶¶ 82-135.)  On June 30, 2023, Defendants filed an answer to Plaintiff's SAC.  (Doc. No. 39.)

On September 29, 2023, the parties participated in a full-day mediation with a mediator with extensive experience in California wage and hour class action lawsuits. (Doc. No. 49-2, Melmed Decl. ¶ 24.)  The mediation negotiations were contentious, but the parties were eventually able to reach the broad terms of a settlement agreement.  (Id.)

On November 9, 2023, the parties notified the Court that they had reached a settlement in principle. (Doc. No. 45.)  On February 29, 2024, Plaintiff filed an unopposed motion for preliminary approval of class action settlement.  (Doc. No. 49.)  On April 8, 2024, the Court granted Plaintiff's motion and: (1) certified the class for settlement purposes; (2) preliminarily approved the class action settlement; (3) appointed a class

---

[3]   On April 4, 2024, pursuant to the parties' joint motion, the Court granted Plaintiff leave to file a Third Amended Complaint.  (Doc. No. 51.)  Plaintiff's third amended complaint, including the modifications discussed at the April 8, 2024 hearing, is due by April 11, 2024.  (Id. at 2.)  The filing of this third amended complaint is part of the parties' settlement agreement.  (See Doc. No. 49-2, Melmed Decl. ¶ 25, Ex. A, Settlement § 12.1.) In addition, at the April 8, 2024 hearing, the parties agreed and represented that Plaintiff's filing of her third amended complaint should not affect the Court's approval of Plaintiff's motion for preliminary approval of the class action settlement.

representative, class counsel, and a settlement administrator; (4) approved the class notice; and (5) scheduled a final approval hearing.  (Doc. No. 54 at 18.)  The Court appointed Plaintiff as class representative, Melmed Law Group P.C. as class counsel, and ILYM Group Inc. ("ILYM") as the settlement administrator.  (Id.)  On April 11, 2024, pursuant to the terms of the parties' settlement agreement and to encompass the scope of the agreed-upon settlement, Plaintiff filed a third amended complaint.  (Doc. No. 56; see also Doc. No. 50.)

By the present motion, Plaintiff moves for final approval of the class action settlement.  (Doc. No. 58-1.)  In addition, Plaintiff requests attorneys' fees, costs, and a class representative incentive award.  (Id.)

## II.    The Settlement Agreement

On January 23, 2024, the parties finalized the settlement agreement.  (See Doc. No. 49-2, Melmed Decl. ¶ 24, Ex. A, Settlement Agreement.)   The settlement agreement defines the settlement class as: "all individuals who are or were employed by the Gallagher Entities as non-exempt employees in California during the Class Period."[4]  (Doc. No. 49-2, Melmed Decl. Ex. A, Settlement Agreement § 1.5.)  "Class Period" is defined as "the period from October 28, 2018 until the date the Court grants Preliminary Approval."  (Id. § 1.12.)

Under the settlement agreement, Defendant will pay a gross settlement amount of $4,000,000.  (Id. § 3.1.)  Each settlement class member will receive an individual class

---

[4]    The parties' settlement agreement defines "Gallagher Entities" as "any and all entities that are encompassed within the corporate umbrella of Arthur J. Gallagher & Co., including but not limited to Arthur J. Gallagher & Co.; Arthur J. Gallagher Service Company, LLC; Arthur J. Gallagher Service Company, Inc.; Pronto California Agency LLC; Pronto California General Agency LLC; Arthur J. Gallagher & Co. Insurance Brokers of California, Inc.; Arthur J. Gallagher Risk Management Services, Inc.; Gallagher Basset Services, Inc.; Risk Placement Services, Inc.; Gallagher Benefit Services, Inc.; Arthur J. Gallagher Brokerage & Risk Management Services, LLC; Arthur J. Gallagher (U.S.) LLC; and Premier Insurance Services, Inc."  (Doc. No. 49-2, Melmed Decl. Ex. A, Settlement § 1.24.)

payment calculated by "(a) dividing the Net Settlement Amount by the total number of Workweeks worked by all Participating Class Members during the Class Period and (b) multiplying the result by each Participating Class Member's Workweeks." (Id. § 3.2.4.)

Under the settlement agreement, upon the funding of the gross settlement amount by Defendants, every participating class member will release Defendants from the "Released Class Claims," which is defined as "any and all claims, known or unknown, that were asserted in any complaint in the Action and/or Plaintiff's PAGA Notices; as well as any and all claims, known or unknown, that could have been asserted against Defendants and/or any of the Gallagher Entities in any complaint in the Action or Plaintiff's PAGA Notices based on the facts and allegations alleged in any complaint in the Action and/or Plaintiff's PAGA Notices." (Id. §§ 1.42, 5.2.)  In addition, Defendants will be released from the Released PAGA Claims, which is defined in the agreement as "any and all claims, known or unknown for civil penalties under California Labor Code section 2698 et seq. (PAGA) that: were asserted in any complaint in the Action and/or Plaintiff's PAGA Notices; as well as any and all claims, known or unknown, that could have been asserted against Defendants and/or any of the Gallagher Entities in any complaint in the Action or Plaintiff's PAGA Notices based on the facts and allegations alleged in any complaint in the Action and/or Plaintiff's PAGA Notices." (Id. §§ 1.43, 5.3.)

In the settlement agreement, Plaintiff indicates that she intends to seek a class representative's service payment of up to $7,500.00 from the settlement fund. (Id. § 3.2.1.) Class counsel also intends to request an attorneys' fee award of $1,333,333.33, or one-third of the gross settlement fund, as well as litigation expenses of up to $20,000.00. (Id. § 3.2.2.)

In the present motion, Plaintiff seeks the following distribution of the $4,000,000.00 gross settlement amount: (1) $1,333,333.33 in attorneys' fees; (2) $14,537.42 in litigation costs; (3) $23,000.00 in settlement administration costs; (4) a $7,500.00 representative incentive award for Plaintiff; (5) a $150,000.00 PAGA payment, apportioned 75% ($112,500.00) to the Labor Workforce and Development Agency ("LWDA") and 25%

($37,500.00) to aggrieved employees; and (6) a net settlement amount of $2,471,629.25. (Doc. No. 58-1 at 2; Doc. No. 58-4, Snow Decl. ¶ 15.)  Class counsel estimates that the average payment to participating class members will be $1,056.70 and the average PAGA payment to aggrieves employees will be $24.59.  (Doc. No. 58-1 at 3; Doc. No. 58-4, Snow Decl. ¶ 15.)

## III.   Class Notice

The Court appointed ILYM as the settlement administrator for the action.  (Doc. No. 54 at 18.)  On April 8, 2024, ILYM received the Court approved class notice packet from class counsel.  (Doc. No. 58-4, Snow Decl. ¶ 4.)  ILYM then prepared a draft of the formatted notice packet, which was approved by the parties' counsel prior to mailing.  (Id.)

On May 6, 2024, ILYM received the class data file from counsel for Defendants, which contained the name, social security number, last known mailing address, the number of workweeks worked for each settlement class member during the class period and the number of pay periods worked for each aggrieved employee during the PAGA period.  (Id. ¶ 5.)  The class list contained 2,342 individuals.  (Id.)  Prior to mailing the notice packets, all 2,342 names and addresses contained in the class list were then processed against the National Change of Address ("NCOA") database, maintained by the United States Postal Service ("USPS"), for purposes of updating and confirming the mailing addresses of the settlement class members.  (Id. ¶ 6.)

On May 13, 2024, ILYM mailed the notice packets, via U.S First Class Mail, to all 2,342 individuals contained in the class list.  (Id. ¶ 7.)  As of July 29, 2024, 146 notice packets have been returned to ILYM.  (Id. ¶ 8.)  Of the 146 returned notice packets, four were returned with a forwarding address and the notice packets were promptly re-mailed to those forwarding address provided.  (Id.)  ILYM performed a computerized skip trace on the remaining 142 returned notice packets in an effort to obtain updated addresses.  (Id.) As a result of this skip trace, 80 updated addresses were obtained and notice packets were promptly re-mailed to those settlement class members, via U.S. First Class Mail.  (Id.)  In addition, one settlement class member contacted ILYM to request that a notice packet be

remailed to them.  (<u>Id.</u>)  ILYM has deemed 62 notice packets undeliverable as no updated addresses were found notwithstanding the skip tracing.  (<u>Id.</u> ¶ 10.)

As of July 29, 2024, ILYM has received no objections to the settlement and three requests for exclusion.  (<u>Id.</u> ¶¶ 11-12.)  ILYM has received four disputes from settlement class members.  (<u>Id.</u> ¶ 13.)  Those four disputes were forwarded to defense counsel for review and have been resolved.  (<u>Id.</u>)  ILYM reports that there is currently 2,339 participating class members, which represents a 99.87% participation rate.[5]  (<u>Id.</u> ¶ 14.)

## <u>Discussion</u>

## I.     Final Certification of Settlement Class

The Court previously found that all the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) had been met in its order preliminarily certifying the class. (Doc. No. 54 at 10.)  Given that no substantive issues concerning class certification have been raised since the Court granted preliminary approval of the settlement class, the Court incorporates its prior analysis by reference, (<u>id.</u> at 6–10), and finds that final class certification for settlement is appropriate.  The Court certifies the following as the class members: "all individuals who are or were employed by the Gallagher Entities as non-exempt employees in California during the Class Period."[6]  (<u>See</u> Doc. No. 58-2, Melmed

---

[5]     In addition to the class notice, on February 29, 2024, class counsel submitted the settlement agreement to the LWDA pursuant to California Labor Code § 2699(l)(2).  (Doc. No. 58-2, Melmed Decl. ¶ 32, Ex. D.)  And, on July 29, 2024, Defendant gave notice regarding the settlement to the United States and California Attorney Generals as required by PAGA and CAFA.  (<u>Id.</u> ¶¶ 30-31.)

[6]     "Gallagher Entities" is defined as "any and all entities that are encompassed within the corporate umbrella of Arthur J. Gallagher & Co., including but not limited to Arthur J. Gallagher & Co.; Arthur J. Gallagher Service Company, LLC; Arthur J. Gallagher Service Company, Inc.; Pronto California Agency LLC; Pronto California General Agency LLC; Arthur J. Gallagher & Co. Insurance Brokers of California, Inc.; Arthur J. Gallagher Risk Management Services, Inc.; Gallagher Basset Services, Inc.; Risk Placement Services, Inc.; Gallagher Benefit Services, Inc.; Arthur J. Gallagher Brokerage & Risk Management Services, LLC; Arthur J. Gallagher (U.S.) LLC; and Premier Insurance Services, Inc." (<u>See</u> Doc. No. 58-2, Melmed Decl. Ex. A, Settlement Agreement § 1.24.)

Decl. Ex. A, Settlement Agreement § 1.5.)

## II.     Final Approval of Class Action Settlement

Class action settlements must be approved by the district court.  Fed. R. Civ. P. 23(e).  Specifically, Federal Rule of Civil Procedure 23(e)(1)–(5) requires a district court to: (1) ensure notice is sent to all class members; (2) hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (3) confirm that the parties seeking approval file a statement identifying the settlement agreement; and (4) be shown that class members were given an opportunity to object.  Fed. R. Civ. P. 23(e)(1)–(5).

Class counsel filed the settlement agreement on February 29, 2024 and an addendum to the settlement agreement on April 8, 2024.  (See Doc. No. 49-2, Melmed Decl. Ex. A, Settlement Agreement; Doc. No. 52.)   In addition, class members were given an opportunity to object to the settlement by June 27, 2024.  (Doc. No. 58-4, Snow Decl. ¶ 12.) As of July 29, 2024, no objections have been received by the settlement administrator.  (See id.)  Following the final fairness hearing, the Court evaluates the adequacy of notice and conducts its final review of the settlement.

### A.     Adequacy of Notice

Adequate notice of the class settlement must be provided under Federal Rule of Civil Procedure 23(e).  "While Rule 23 requires that 'reasonable effort' be made to reach all class members, it does not require that each individual actually receive notice."  Winans v. Emeritus Corp., No. 13-cv-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016); see also Silber v. Mabon, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (explaining that the district court need not ensure all class members receive actual notice, only that "the best practicable notice" is given).

The Court previously reviewed the content of the class notice, the method for providing notice, and the procedure for class members to opt out or object at the preliminary approval stage and found each to be satisfactory under Rule 23(c)(2)(B) and Rule 23(c)(3).  (See Doc. No. 54 at 15–17.)  Following the Court's grant of preliminary approval, on May 6, 2024, ILYM – the settlement administrator – received the class data

file from Defendants, which included mailing addresses for 2,342 unique class members from Defendants.  (Doc. No. 58-4, Snow Decl. ¶ 5.)  After confirming and updating those addresses against the National Change of Address database maintained by the United States Postal Service, on May 13, 2024, ILYM mailed the notice packets to the 2,342 class members via U.S. First Class Mail.  (Id. ¶¶ 6-7.)  ILYM represents that a total of 62 notice packets have been deemed undeliverable because ILYM found no updated address despite performing skip tracing.  (Id. ¶¶ 8-10.)  As of July 29, 2024, ILYM has received three requests for exclusion.  (Id. ¶ 11.)  As such, 99.87% (2,339/2,342) of the class is participating in the settlement.  (Id. ¶ 13.)  Given the above, the Court finds that ILYM provided adequate notice per the Court's preliminary approval order, (see Doc. No. 54 at 15-17), and satisfied Rule 23(e).

      B.    <u>Final Fairness Determination</u>

A proposed class settlement can only be approved if "it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making this determination, district courts in the Ninth Circuit consider several factors, including: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement."  <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 959 (9th Cir. 2003) (quotations omitted).  A proposed settlement must additionally meet the factors enumerated in Federal Rule of Civil Procedure 23(e)(2)(A)–(D).

"In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'"  <u>In re Heritage Bond Litigation</u>, No. 2-ML-01475 DT, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) (quoting <u>Class Plaintiffs v. City of Seattle</u>, 955 F.2d 1268, 1276 (9th Cir. 1991)).  Further, the Ninth Circuit favors deference "to the private consensual decision of the [settling] parties," particularly when the parties are

represented by experienced counsel. <u>Rodriguez v. W. Publ'g Corp.</u>, 563 F.3d 948, 965 (9th Cir. 2009). Nevertheless, when "class counsel negotiates a settlement agreement before the class is even certified," settlement approval "requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." <u>Dennis v. Kellogg Co.</u>, 697 F.3d 858, 864 (9th Cir. 2012) (quotation marks and citations omitted). As such, courts must also scrutinize proposed settlements for "evidence of collusion or other conflicts of interest." <u>In re Bluetooth Headset Prods. Liab. Litig.</u>, 654 F.3d 935, 946–47 (9th Cir. 2011).

### 1.   <u>The Strength of Plaintiff's Case and the Risk of Further Litigation</u>

Both parties have expended significant time, effort, and resources supporting their positions, and they would continue to do so if the settlement failed to receive final approval. Here, Plaintiff's primary claim stems from Defendants' alleged consistent policy of rounding shift start and end times, which Plaintiff contends is unlawful. (Doc. No. 58-1 at 9.) Plaintiff alleged that she and the class members worked certain hours for which they were not paid due to Defendants' unlawful rounding policy. (<u>Id.</u>) Plaintiff further alleged that when Defendants paid overtime to Plaintiff and the class members, Defendants did not pay overtime at the proper rate. (<u>Id.</u>) Plaintiff also alleged that Defendants' employees were required to work through their meal periods and rest periods, and that they were required to use their personal cell phones and personal devices for work purposes without any corresponding reimbursement. (<u>Id.</u>)

In response to Plaintiff's claims, Defendants maintained (and continues to maintain) that they have complied with California law in all respects, denied all liability of any kind associated with the claims and allegations, and further denied that the employees are entitled to any relief. (Doc. No. 58-2, Melmed Decl. ¶ 12.) Defendants also deny that these allegations are appropriate for class or representative treatment for any purpose other than the settlement. (<u>Id.</u>) Defendants thus argued that their realistic exposure was effectively $0. (<u>Id.</u>)

Class counsel represents that continued litigation in this case would be costly, time

consuming, and uncertain in outcome.  (Id. ¶ 13.)  And there is always a risk of the class not being certified and/or being decertified or of losing on the merits on the principal and/or the derivative claims.  (Id.)  Class counsel represents that the settlement agreement here ensures timely relief and a substantial recovery of the amounts that Plaintiff contends are owed to the class members.  (Id.)  See Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlement." (internal quotation marks and citation omitted)).  In light of the above, the Court concludes that the strength of the parties' positions as well as the risk of further litigation weigh in favor of approving the settlement.

### 2.   The Settlement Amount

In determining whether a settlement agreement is substantively fair to the class, courts must balance the value of the plaintiffs' expected recovery against the value of the settlement offer.  In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  The Ninth Circuit has cautioned that "the proposed settlement is 'not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.'"  Martinez v. Semi-Tropic Coop. Gin & Almond Huller, Inc., No. 19-cv-01581-JLT-CDB, 2023 WL 3569906, at *14 (E.D. Cal. May 19, 2023) (emphasis removed) (quoting Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982) (citations omitted)).

Here, the parties agreed to settle all claims for a gross settlement amount of $4,000,000.00.  (Doc. No. 58-1 at 2.)  After deducting for fees, costs, the incentive award, and PAGA payments, the net settlement amount offered to the class members totals approximately $2,471,629.25.  (Id.)  The average recovery for each class member will be $1,056.70 and the highest payout will be $3,743.29.  (Id. at 3.)  This settlement amount is reasonable when compared with other wage and hour settlements approved in recent years by California federal courts.  See e.g., Sarabia v. Ricoh USA, Inc., No. 820–CV–00218–JLS–KES, 2023 WL 3432160, at *1, 5 (C.D. Cal. May 1, 2023) (finding wage and hour

class action settlement with an average net payout of $1,119 per class member reasonable); Mondrian v. Trius Trucking, Inc., No. 119–CV–00884–ADA–SKO, 2022 WL 6226843, at *6 (E.D. Cal. Oct. 7, 2022) (determining wage and hour class and collective action settlement reasonable where average class member received $1,528.81).

This settlement is a good result for the class and eliminates the risks, expenses, and delay associated with continued litigation.  Moreover, the gross settlement amount is the result of arm's-length negotiation conducted by experienced counsel and an experienced mediator.  See Rodriguez, 563 F.3d at 966 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").  As such, the Court concludes that the amount offered in settlement weighs in favor of granting final approval of the settlement.

3.    The Extent of Discovery Completed and the Stage of the Proceedings

The parties' settlement was the result of contentious arms-length negotiations and was reached after the parties participated in a full-day mediation with an experienced mediator who has extensive experience in California wage and hour class action lawsuits. (Doc. No. 49-2, Melmed Decl. ¶¶ 6, 24.)  Prior to that mediation, Plaintiff's counsel conducted significant informal discovery, including:

> numerous telephonic conferences with Plaintiff; inspection and analysis of hundreds of pages of documents and other information produced by Plaintiff and Defendant; analysis of work-related data from a sample of Class Members and PAGA Class Members; and an analysis of the legal positions taken by Defendant; investigation into the viability of class treatment of the claims asserted in the action; analysis of potential class-wide damages, including information sufficient to understand Defendant's potential defenses to Plaintiff's claims; research of the applicable law with respect to the claims asserted in the amended complaint and the potential defenses thereto; and assembling and analyzing of data for calculating damages.

(Id. ¶ 23.)  Class counsel represents that, based upon the record that was developed through this investigation and informal discovery process, Plaintiff's counsel was able to realistically estimate class damages and assess the risks of further litigation before reaching the settlement.  (Doc. No. 58-2, Melmed Decl. ¶ 14.)

Considering this history, the record supports the conclusion that the parties conducted sufficient discovery to allow them to make an informed decision to settle this case. See Yanez v. HL Welding, Inc., No. 20-cv-01789-MDD, 2021 WL 3054986, at *7 (S.D. Cal. July 20, 2021) ("The use of an experienced private mediator and presence of discovery supports the conclusion that Plaintiffs were armed with sufficient information about the case to broker a fair settlement." (internal quotations omitted) (quoting Uschold v. NSMG Shared Servs., LLC, 333 F.R.D. 157, 170 (N.D. Cal. 2019))); Ontiveros v. Zamora, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("[T]he parties' apparent careful investigation of the claims and their resolution in consideration of the views of a third party mediator weigh in favor of settlement."); Couser v. Comenity Bank, 125 F. Supp. 3d 1034, 1042 (S.D. Cal. 2015) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."). As such, this factor also weighs in favor of granting final approval of the settlement.

4. The Experience and Views of Counsel

Class counsel has extensive experience acting as counsel in wage and hour class actions. (See Doc. No. 58-2, Melmed Decl. ¶¶ 7-12, Ex. B.) Class counsel represents that he believes the proposed settlement is fair, adequate, and reasonable and in the best interest of the class members. (Id. ¶ 16.) Class counsel's expertise and sound support of the settlement weighs in favor of granting final approval. See In re Immune Resp. Sec. Litig., 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (The parties' "negotiation and adoption of the settlement terms, based on their familiarity with the law in this practice area and the strengths and weaknesses of their respective positions, suggests the reasonableness of the settlement. This factor clearly favors settlement."); see also Blount v. Host Healthcare, Inc., No. 21-cv-00310-MMA, 2022 WL 1094616, at *3 (S.D. Cal. April 12, 2022) ("Great weight is accorded to the recommendation of counsel," because "parties represented by competent counsel are better positioned than the courts to produce a settlement that fairly reflects each party's expected outcome in the litigation" (citations and internal quotations omitted)).

### 5. Presence of a Government Participant

No government entity participated in this case. However, the proposed settlement will result in $150,00.00 in PAGA penalties, $112,500.00 of which will be paid to the LWDA. (Doc. No. 58-1 at 2; Doc. No. 58-4, Snow Decl. ¶ 15; Doc. No. 58-2, Melmed Decl. Ex. A, Settlement Agreement § 1.37.) Class counsel provided notice and a copy of the settlement to the LWDA prior to filing Plaintiff's motion for preliminary approval. (Doc. No. 58-1 at 6-7; Doc. No. 58-2, Melmed Decl. ¶¶ 30-32.) To date, the LWDA has not made any objections to the proposed settlement. Because the class shares civil penalties with the State of California, this factor weighs in favor of final approval of the settlement. See Cordova v. BAE Sys. Tech. Sols. & Servs., Inc., No. 20-CV-2425 JLS (MDD), 2022 WL 298365, at *8 (S.D. Cal. Feb. 1, 2022) (weighing PAGA penalties in favor of settlement approval and collecting cases).

### 6. The Reaction of the Class Members to the Proposed Settlement

There are 2,342 class members. (Doc. No. 58-4, Snow. Decl. ¶ 5.) As of July 29, 2024, no class members have objected, and only three class members have requested exclusion from the class. (Id. ¶¶ 11-12.) In addition, ILYM received four disputes from settlement class members, and all four disputes have been resolved. (See id. ¶ 13.) The complete lack of objections and minimal exclusions indicates the adequacy of the settlement. See Benitez v. W. Milling, LLC, No. 1:18-CV-01484-SKO, 2020 WL 3412725, at *7 (E.D. Cal. June 22, 2020) ("[I]t is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.") (citation omitted). As such, the class members' reaction weighs in favor of granting final approval.

### 7. No Signs of Collusion

The collusion inquiry addresses the possibility that the agreement is the result of either overt misconduct by the negotiators or improper incentives of certain class members at the expense of other members of the class. Staton, 327 F.3d at 960. The Ninth Circuit

has articulated the following as "subtle signs" of collusion, including: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." In re Bluetooth, 654 F.3d at 947 (internal quotations and citations omitted).

Here, there is no evidence of overt misconduct nor any indication of collusion. Every class member will receive a monetary distribution, and the requested attorneys' fees are reasonable considering the record and the time spent by class counsel. See Order infra Section III.A. There is no clear sailing arrangement as part of the parties' settlement agreement. (See generally Doc. No. 58-2, Melmed Decl. Ex. A, Settlement Agreement.) Additionally, the fund is non-reversionary, meaning that none of the funds will revert to Defendants. (See Doc. No. 58-1 at 3.) Finally, the proposed settlement was the result of significant arms-length negotiations between experienced counsel with a respected mediator after years of litigation. See Mauss v. NuVasive, Inc., Case No. 13cv2005 JM (JLB), 2018 WL 6421623, at *4 (S.D. Cal. Dec. 6, 2018) (finding no collusion based on extensive litigation, counsel's experience, and the parties' participation in mediation).

### 8.   Approval Conclusion

After considering all applicable factors, the Court concludes the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); Staton, 327 F.3d at 960. As such, the Court approves the settlement.

## III.   Final Approval of PAGA Penalties

The settlement agreement resolves claims brought under PAGA. (Doc. No. 58-2, Melmed Decl. Ex. A, Settlement Agreement §§ 1.37, 1.43, 5.3.) "A PAGA representative action is . . . a type of qui tam action" where a private plaintiff pursues a dispute between an employer and the California LWDA as the proxy or agent of the state. Haralson v. U.S. Aviation Servs. Corp., 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019); Cal. Lab. Code §

2699(a).  "[B]ecause a settlement of PAGA claims compromises a claim that could otherwise be brought by the state," courts must "review and approve any [PAGA] settlement."  <u>Ramirez v. Benito Valley Farms, LLC</u>, No. 16-CV-04708-LHK, 2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017); <u>see</u> Cal. Lab. Code § 2699 (l)(2).  Proposed settlements must also be submitted to the LWDA.[7]  <u>See</u> Cal. Lab. Code § 2699 (l)(2).  No binding authority sets forth the proper standard of review for PAGA settlements; however, California district courts often apply "a Rule 23-like standard, asking whether the settlement of the PAGA claims is 'fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes.'"  <u>Arredondo v. Sw. & Pac. Specialty Fin., Inc.</u>, No. 118CV01737DADSKO, 2022 WL 2052681, at *9 (E.D. Cal. June 7, 2022) (quoting <u>Haralson</u>, 383 F. Supp. 3d at 972).

Here, the settlement agreement provides for $150,000.00 in civil PAGA penalties. (Doc. No. 58-1 at 2; Doc. No. 58-4, Snow Decl. ¶ 15; Doc. No. 58-2, Melmed Decl. Ex. A, Settlement Agreement § 1.37.)  Pursuant to PAGA, 75% of the civil PAGA penalties, or $112,500, will go to the LWDA, and 25%, or $37,500, will be distributed proportionally to all PAGA Members.  (<u>Id.</u>) <u>See also</u> Cal. Lab. Code § 2699(i).  This amount of PAGA penalties represents 3.75% of the gross settlement amount.  In addition, there have been no objections to the settlement from the LWDA or class members.  (Doc. No. 58-4, Snow Decl. ¶ 12.)  As such, the Court finds that the settlement agreement's $150,000.00 PAGA penalty is reasonable, fundamentally fair, and adequate.  <u>See Alcala v. Meyer Logistics, Inc.</u>, No. CV177211PSGAGRX, 2019 WL 4452961, at * 9 (C.D. Cal. June 17, 2019) (collecting cases in which courts approved PAGA penalties between 0 and 2% of the gross settlement amount).

/ / /

---

[7]     Class counsel provided notice and a copy of the settlement to the LWDA prior to filing Plaintiff's motion for preliminary approval of class action settlement.  (Doc. No. 58-1 at 6-7; Doc. No. 58-2, Melmed Decl. ¶¶ 30-32.)

16

22-cv-01910-H-DEB

**IV.    Attorneys' Fees, Costs, and Incentive Payment to Class Representative**

Having granted final approval of the settlement, the Court now turns to class counsel's request for attorneys' fees, costs, and an incentive payment to the class representative.  Here, class counsel requests $1,333,333.33 in attorneys' fees, $14,537.42 in litigation costs, and $7,500 as an incentive award for the class representative.  (Doc. No. 58-1 at 14, 15, 22.)

A.    Attorneys' Fees

Pursuant to Federal Rule of Civil Procedure 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  In re Bluetooth, 654 F.3d at 941.

With respect to the attorneys' fees, "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark" in common fund cases.  Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010); Stanger v. China Elec. Motor, Inc., 812 F.3d 734, 738 (9th Cir. 2016).  This "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."  Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).  Regardless of whether courts use the percentage approach or the lodestar method, the main inquiry is whether the end result is reasonable.  Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir. 2000).  The Ninth Circuit has identified several factors that may be relevant in determining if the award is reasonable, including: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases.  See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048–50 (9th Cir. 2002).

Here, class counsel requests an award of $133,333,333.33 in attorneys' fees to be

paid from the gross settlement amount.  (Doc. No. 58-1 at 15.)  The requested amount of attorneys' fees is one-third (33 1/3%) of the total settlement fund of $4,000,000.  (See id. at 2.)  This is a higher percentage than the Ninth Circuit's 25% benchmark for common fund cases.  Nevertheless, class counsel achieved an overall award that was quite favorable, and the risks of continuing to litigate this case were real and substantial.  See supra Order Section II.B.1.  Moreover, class counsel took this case on a contingent fee basis, bearing the entire risk and cost of litigation.  (See Doc. No. 58-1 at 18.)  Further, class members received notice of the requested attorneys' fees award, and no class members have objected.  (Id. at 16; see Doc. No. 58-4, Snow Decl. ¶ 12.)  And the requested fee award is in line with what other district courts in this Circuit have awarded in cases where class counsel took the case on contingency and no class member objected.  See, e.g., Taylor v. Populus Grp., LLC, No. 20-CV-0473-BAS-DEB, 2023 WL 139898, at *4 (S.D. Cal. Jan. 9, 2023) ("[C]ourts in this district have approved 33.3% attorneys' fees in wage and hour class action settlements."); Anthony Ayala v. U.S Xpress Enterprises, Inc., No. EDCV 16-137-GW-KKX, 2023 WL 6559786, at *7 (C.D. Cal. Sept. 15, 2023) (approving 33% fee award in wage and hour class action where class counsel took the case on contingency and no class member objected); Ochinero v. Ladera Lending, Inc., No. SACV191136JVSADSX, 2021 WL 4460334, at *8 (C.D. Cal. July 19, 2021) (approving 33% fee award from common fund settlement where counsel took the case on contingency and no class member objected); see also Arredondo, 2022 WL 2052681, at *12-15 (approving 30% fee award from common fund wage and hour settlement where counsel took the case on contingency and there were no "objections to the settlement or requests for exclusions").

Finally, as a cross-check, class counsel represents that the fees calculated under the lodestar method would be $92,286.00.  (Doc. No. 58-1 at 21; Doc. No. 58-2, Melmed Decl. ¶¶ 21-28.)  Thus, the amount class counsel requests ($1,333,333.33) is approximately 14.45 times what class counsel would receive under the lodestar method ($92,286).  See In re Bluetooth., 654 F.3d at 944-45 (encouraging district courts to cross-check their

calculations under the percentage-of-recovery method against the lodestar method). Although this is a hefty multiplier, it is within the accepted range for common fund cases where class counsel took the case on a contingency fee arrangement.  See Vizcaino, 290 F.3d at 1051 n.6 (affirming multiplier of 3.65 in a common fund case and noting that the multiplier range for common fund cases examined was 0.6 to 19.6); Craft v. Cnty. of San Bernardino, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (collecting common fund cases with multipliers over 5.2, including multipliers of 19.6 and 15.6); see also Vizcaino, 290 F.3d at 1051 ("Indeed, 'courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.'").

B.   Costs

Class counsel represents to the Court that they incurred litigation expenses in the amount of $14,537.42.  (Doc. No. 58-1 at 22; Doc. No. 58-2, Melmed Decl. ¶ 29, Ex. C.) This amount is below the $20,000 upper limit set forth in the parties' settlement agreement and preliminarily approved by the Court.  (See Doc. No. 58-2, Melmed Decl., Ex. A, Settlement Agreement § 3.2.2; Doc. No. 54 at 14-15.)  "'Class Counsel are entitled to reimbursement of the out-of-pocket costs that they reasonably incurred investigating and prosecuting [the] case.'"  Taylor, 2023 WL 139898, at *4; see Carlin v. DairyAmerica, Inc., 380 F. Supp. 3d 998, 1023 (E.D. Cal. 2019) ("An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation costs from that fund.").  "The award 'should be limited to typical out-of-pocket expenses that are charged to a fee-paying client and should be reasonable and necessary.'"  Carlin, 380 F. Supp. 3d at 1023 (quoting In re Immune Response Sec. Litig., 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007)).

After reviewing class counsel's declaration regarding expenses, the Court concludes that the requested litigation expenses are reasonable, and grants class counsel's request for those fees.  As such, the Court grants Plaintiff's request for $14,537.42 in litigation costs.

/ / /

/ / /

1    C.    Incentive Award to Class Representative

2        Class counsel requests a $7,500 incentive award for the class representative.  (Doc.

3   No. 58-1 at 14.)  "The criteria courts may consider in determining whether to make an

4   incentive award include: (1) the risk to the class representative in commencing suit, both

5   financial and otherwise; (2) the notoriety and personal difficulties encountered by the class

6   representative; (3) the amount of time and effort spent by the class representative; (4) the

7   duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class

8   representative  as  a  result  of  the  litigation."   Cox v. Clarus Mktg. Grp., LLC, 291

9   F.R.D. 473, 483 (S.D. Cal. 2013) (citations omitted).

10        After reviewing these factors, the Court concludes that the requested incentive award

11   is fair and reasonable.  Throughout the litigation, Plaintiff regularly conferred with class

12   counsel to discuss the status of the case, to offer her input, and to assist the attorneys in

13   gathering the evidence necessary to prosecute her claims.  (Doc. No. 58-3, Hernandez Decl.

14   ¶ 4.)  In addition, in preparation for mediation, Plaintiff participated in multiple discussions

15   with her attorneys regarding the job duties and daily activities at her job site.  (Id. ¶ 5.)

16   Further, Plaintiff's participation in the case as the named plaintiff required her to assume

17   risks, including but not limited to potential reputational harm of having her name affiliated

18   with an employment lawsuit and the potential resulting stigma from future prospective

19   employers.  (Id. ¶ 9.)  Finally, the $7,500 incentive award requested is well within the

20   acceptable range awarded in similar cases.  See Gutierrez v. Amplify Energy Corp., No.

21   8:21-CV-01628-DOCJDEX, 2023 WL 6370233, at *8 (C.D. Cal. Sept. 14, 2023) ("Service

22   awards of $7,500 or larger are often awarded in this Circuit."); see, e.g., Fulford v.

23   Logitech, Inc., No. 08-CV-02041, 2010 WL 807448, at *3 n.1 (N.D. Cal. 2010) (collecting

24   cases awarding incentive payments ranging from $5,000 to $40,000).  As such, the Court

25   grants Plaintiff's request for an incentive award of $7,500.

26   / / /

27   / / /

28   / / /

## Conclusion

For the reasons above, the Court grants Plaintiff's motion. The Court has jurisdiction over the subject matter of this action and all parties to the action, including the settlement class members. First, the Court certifies the settlement class and grants final approval of the settlement, including the PAGA payment. All persons who satisfy the class definitions and did not opt out of the settlement classes by the deadline are class members bound by this Order. The form and method of notice satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution. Second, the Court grants class counsel $1,333,333.33 in attorneys' fees and $14,537.42 in documented out-of-pocket litigation expenses. The Court also grants $23,000.00 in costs to the settlement administrator. Further, the Court grants Plaintiff an incentive award of $7,500.00. The attorneys' fees, costs, and incentive award will be paid out of the settlement fund.

**IT IS SO ORDERED.**

DATED: August 26, 2024

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT